UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
v. ) CR 14-084-M-PAS
)
CHRISTINE POWELL )
)
Defendant )

## **MEMORANDUM AND ORDER**

JOHN J. McCONNELL, JR., United States District Judge.

This matter is before the Court on Christine Powell's Motion to Dismiss the Indictment (ECF No. 19), contending that it runs afoul of the statute of limitations and that it is duplicitous. In brief, the Court concludes that 18 U.S.C. §641 is not a continuing offense, and thus the acts of embezzlement charged to have occurred more than five (5) years before the filing of the Indictment are barred by the applicable statute of limitations. The Court does not agree, however, that the remedy is dismissal of the Indictment. Nor does the Court agree that the Indictment is duplicitous.

Allegations

The government alleges that Ms. Powell willfully embezzled $110,328.00 in Social Security payments by failing to report the death of her grandmother, to whom the benefits were due and paid.[1] Instead, after her grandmother's death, according to the government, Ms. Powell

---

[1] This single count Indictment charges that "[f]rom in or about July 2001, to in or about March 2013, in the District of Rhode Island and elsewhere, the defendant, CHRISTINE POWELL, aka

converted to her own use the payments made into a bank account she had jointly held with her grandmother.

Ms. Powell's grandmother died in June 2001. The Indictment charges that the embezzlement began in July 2001 and continued to March 2013.

Statute of Limitations

The appropriate statute of limitations for an offense charged under 18 U.S.C. §641 is five years. 18 U.S.C. §3282(a).[2] The Indictment was filed on June 18, 2014. (ECF 1). Whether the government can charge acts occurring prior to June 18, 2009, depends on whether embezzlement prosecuted under §641 is a "continuing offense." Ordinarily, acts occurring prior to June 18, 2009, would be barred, but an exception exists for offenses that are deemed "continuing." In those cases, the charging instrument can reach back to embrace conduct occurring outside the limitations period, so long as the charge is filed within five years of the completion of the offense.

The First Circuit has not spoken on whether this §641 offense is a "continuing" one. There are, however, conflicting decisions among some other Circuits as well as conflicting decisions from two district courts within this Circuit. Compare, *United States v. Yashar*, 166 F.3d 873, 879 (7th Cir. 1999) (holding that "the limitations period would be virtually

---

CHRISTINE POWELL-FLANDER, did willfully and knowingly embezzle, steal, purloin, and convert to her own use, money and a thing of value, to wit, $110,328.00, more or less, of retirement benefits from the Civil Service Retirement System, and property of the United States to which she was not entitled." (ECF 1).

[2] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. §3282(a).

unbounded" if embezzlement under 18 U.S.C. § 666[3] were a continuing offense) with *United States v. Smith*, 373 F.3d 561, 567-68 (4th Cir. 2004) (holding that a section 641 violation was continuing because in that case it involved a "recurring, automatic scheme of embezzlement under section 641 by conversion of funds voluntarily placed in the defendant's possession by the government").

A "continuing offense" is one that either Congress by explicit language intended to be considered "continuing" or it is one which by its very nature is inherently "continuing." *Toussie v. United States*, 397 U.S. 112, 115 (1970). In that case, Robert Toussie was indicted 8 years after his 18th birthday for failing to register for the draft. He contended the charge could be brought only within five years of the registration period, which ended five days after his 18th birthday. The government claimed the offense was one that "continued to be committed each day that Toussie did not register." *Id.* at 114. Because the continuing offense doctrine is inconsistent with the purpose of statutes of limitations, the Court held it should only be invoked "[where] the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved in such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* Finding nothing in the Selective Service Act that manifested an intent that failure to register be a continuing offense, the Court also found it not "inherently" continuing like conspiracy, where "each day's acts bring a renewed threat of the substantive evil Congress sought to prevent." *Id.* at 122.[4] Escape from federal custody, on the other hand, *is* a

---

[3] 18 U.S.C. §666 prohibits similar conduct to that prohibited in §641 when committed by a state, local or tribal official.

[4] Other courts have held "continuing" such offenses as "concealing and retaining" stolen property, *United States v. Blizzard*, 27 F.3d 100, 103 (4th Cir. 1994); possession of a firearm as a convicted felon, *United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir. 1976); and remaining in the country after illegal entry, *United States v. Ibarra-Reyes*, 2007 WL 4287753, at p. *4 (E.D.Va. Dec. 5, 2007). *See, United States v. Pease*, No. CR-07-757-PHX-DGC, 2008 WL

3

"continuing offense" because the "continuing threat to society posed by an escaped prisoner" includes each day's failure to return to custody. *United States v. Bailey*, 444 U.S. 394, 413 (1980). *See also, Ex Parte Snow*, 120 U.S. 274, 281-82 (1887) (cohabitation is a continuing offense for purpose of single count charging).

This Court is confronted with the need to predict which view the First Circuit is likeliest to take. The rationale for each of the two choices has been artfully articulated by district court decisions within this Circuit reaching opposite conclusions. The leading opinion against treating a §641 offense as "continuing" is *United States v. Bundy*, Crim. No. 08-196, 2009 WL 902064, at *11 (D.Me. March 31, 2009), where Magistrate Judge Rich reasoned that the statute of limitations would be susceptible to complete prosecutorial manipulation if a series of discrete acts of embezzlement could be considered a single continuing offense. The *Bundy* opinion is particularly useful because it reached different conclusions with respect to two different offenses. It held that fraudulent receipt of social security benefits over a lengthy period is *not* a continuing offense, either by Congressional intent or its "inherent" nature. In the same opinion, however, the Magistrate Judge found that the crime of having knowledge of a disqualifying event and failing to disclose it *is* a continuing offense. Unlike embezzlement, concealment is "by its nature … an act which goes on until detected or its consequences are purged." *Id.* at *34-35, quoting *United States v. Stein*, 233 F.3d 6, 18 (1st Cir. 2000). Thus *Bundy* provides a useful basis for

---

808683, at *2 (D.Ariz. March 24, 2008) ("Classic examples of continuing offenses include conspiracy, escape, kidnapping, bigamy, and crimes of possession [which, once committed] continue in effect until affirmatively ended.").

4

comparison. The *Bundy* reasoning was endorsed by *United States v. Duhamel*, 770 F.Supp. 414, 416 (D.Me. 2011) (embezzlement charged under §644).[5]

The opposing view in this Circuit was articulated in *United States v. Phan*, 754 F.Supp.2d 186 (D.Ma. 2010), which, like *Bundy* and this case, involved allegations of embezzlement through fraudulent receipt of Social Security benefits. In that case, an authorized representative of a Social Security beneficiary re-directed the checks to her own bank account after the beneficiary was no longer disabled, and continued to receive them for another two years. *Phan* agreed with *Bundy* that nothing in §641 revealed an explicit Congressional intent to treat a §641 prosecution as a "continuing offense," but determined that it was continuing because of the facts of that specific situation:

> This Court is not persuaded by the continuing offense decisions in the lower courts of this Circuit. It finds, instead, that, *while § 641 is not inherently and automatically a continuing offense*, it is in this case where the violation consists of an uninterrupted scheme wrongfully to receive SSI payments which continued well into the statute of limitations period.

*Phan* at 190 (emphasis supplied).

This Court is persuaded that the reasoning of *Phan*, and the Fourth Circuit *Smith* case it followed, are faulty both in analytic framework and application, and that the *Bundy* line of reasoning is the better one. The United States Supreme Court has made very clear that there are two methods by which an offense may be found to be "continuing": explicit Congressional intent or the "inherent nature" of the offense. *Phan* itself agreed that there is no language in §641 manifesting a Congressional intent to treat the offense as a continuing one. *Phan* at 189. *Accord, United States v. Maddox*, Cr. No. 11-0148-WS, 2011 U.S. Dist. LEXIS 76526, at *2 (S.D.Ala. July 14, 2011) ("The government concedes that the explicit language of *Section 641*

---

[5] *Duhamel* noted that Magistrate Judge Rich's Recommendation was adopted by District Judge Hornby. *Duhamel* at 416.

does not compel the question that it is a continuing offense."); *United States v. Gibson,* No. 08-03057-01-CR-S-DGK, 2008 WL 4838226 at *3 (W.D.Mo. Nov. 6, 2008) ("In this case, the parties agree that there is no explicit language in § 641 that compels a conclusion that the delineated offense is a continuing one. Therefore, the first prong of *Toussie* is not met.").

The government here, while noting the two-pronged criteria, offers no analysis of the language of §641 and makes no assertion that it contains an explicit intention with respect to continuing offense. Instead, it relies heavily on *Phan's* "inherent nature" holding and rejects *Bundy* as "wrongly decided." (ECF 31 at 11).

The fundamental problem with *Phan* is that both it and *Smith* create a *tri-part* test for "continuing offense" when the Supreme Court has made clear that there are but two alternative criteria. *Phan* has added to "explicit intent" and "inherent nature" a third: the circumstances of the individual case. It concluded "Phan's receipt of multiple checks forms 'a single, continuing scheme' and, thus, constitutes one continuing offense." *Phan* at 191. The Court in *Smith* reached a similar conclusion because of the facts of that case, expressly cautioning that "[t]his is not to say that all conduct constituting embezzlement may necessarily be treated as a continuing offense as opposed to merely "a series of acts that occur over a period of time"; indeed, it may well be that different embezzlement conduct must be differently characterized in this regard." *Smith* at 568.

It is clear, however, that the "inherent nature" inquiry is to be made of the crime itself independent of any facts peculiar or unique to a particular case. *Bailey* expressly talked of "labeling crimes as continuing offenses," not characterizing particular circumstances. *Bailey,* 444 U.S. at 413. *Toussie,* inquiring into the generic "act of registration" rather than what the defendant had done, recognized the task as "construing a somewhat ambiguous statute," not as

6

applying it to the circumstances of a given case. *Toussie,* 397 U.S. at 122. And *Snow* described "cohabitation" in general terms, as "a man ... living in the same house with two women whom he had theretofore acknowledged as his wives, and eating at their respective tables, and holding them out to the world by his language or conduct, or both, as his wives, ..." *Snow,* 120 U.S. at 281.

> The majority's opinion concludes that a particular offense, in this case embezzlement, may be treated as either a continuing offense or a non-continuing offense for statute of limitations purposes, depending on how the crime is carried out. *See ante* at 9-10. Because I do not believe this conclusion is consistent with the teachings of *Toussie v. United States, 397 U.S. 112, 25 L. Ed. 2d 156, 90 S. Ct. 858 (1970),* I respectfully dissent.

*United States v. Smith, supra* at 568 (Michael, J., dissenting). *Accord, United States v. Niven,* 952 F.2d 289, 293 (9th Cir. 1991) ("As *[Toussie]* makes clear, the analysis turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue.").[6]

In addition to going beyond *Toussie's* framework by holding "continuous offense" a fact-specific instead of offense-generic doctrine, the *Phan* conclusion that §641 charges a continuing offense is inconsistent with the concept of "inherent nature." The hallmarks of an "inherently continuing" offense are "a particular statute ... clearly contemplat[ing] a prolonged course of conduct", *United States v. Toussie, supra* at 120, and an escalating or "renewed threat of the substantive evil Congress sought to prevent." *Id.* at 122. A person may commit embezzlement by engaging in conduct that takes but a few minutes, or she may commit a series of acts over a long period of time that accomplish a single taking; but the embezzlement occurs at a discrete moment in time when the conversion is accomplished. There is nothing inherent in embezzlement that requires a prolonged duration. Similarly, multiple acts of embezzlement do

---

[6] *Toussie* framed the question consistently as whether "a particular offense" should be considered a continuing one, not a particular set of circumstances. *Id.* at 115.

not increase the evil in any way different from multiple holdups of the same convenience store or multiple shopliftings from the same retail establishment.

Finally, while the First Circuit has not addressed the issue of whether §641 charges a continuing offense, the case of *United States v. Venti*, 687 F.3rd 501 (1st Cir. 2012), is of interest. It bears a factual similarity to the allegations made here. Robert Venti shared a joint bank account with his father, who was receiving federal Civil Service Retirement System benefits. After Venti's father died, Venti opened a new account in both his name and his father's, and arranged for the benefits to be deposited there for the next 15 years, until October of 2005. On December 9, 2009, a 9-count indictment was returned – one count for each of nine checks Venti had written in his father's name. *Id. at* 502. In an attempt to bring the aggregate amount under $1,000, the felony threshold, Venti moved to dismiss Count I as barred by the five-year statute of limitations. Although the check had been written in January 2005 – within the five-year limitations period – Venti's theory was that it included funds fraudulently received outside the limitations period.[7] *Id.* at 503. The Circuit rejected Venti's argument because a substantial amount of the January 2005 check included fraudulently-received funds, but what is significant is that the Court did not resort to the "continuing offense" limitations exception when, had it considered §641 a continuing offense, it could have found limitations compliance on that basis. Thus, while *Venti* does not stand for the holding that §641 is not a continuing offense, it is consistent with that proposition.

---

[7] The check was written in January 2005, but Venti presented a complicated theory having to do with the balance in the account in December 2004, and the effect of an overdraft, in an attempt to argue that the benefits funds at issue in Count I were actually expended *prior to* December 9, 2004.

For the above reasons, the Court concludes that §641 is not a continuing offense, either because of explicit Congressional language or by its inherent nature. Thus, conduct alleged to be unlawful under §641 cannot be charged if it predated June 18, 2009.

This holding does not completely resolve the Motion to Dismiss. Ms. Powell contends that including pre-limitations conduct in the Indictment requires dismissal of the charging document. The government contends that, at worst, it would be precluded from relying on pre-limitations activities to prove Count I.

The Court agrees with the government's position. *Bundy*, the principal case upon which Ms. Powell relies and with which this Court agrees, rejected dismissal as a remedy because neither party in that case cited any authority, nor could the Magistrate Judge find any. *Bundy* at *11. *Accord, United States v. Duhamel, supra* at 417 (truncation of the indictment rather than dismissal is the appropriate remedy); *United States v. Gray*, Cr. No. 11-13, 2012 WL 1554649, at *3 (May 1, 2012). Neither party in their memoranda have cited any cases that dismissed the entire Indictment, and this Court has found none.

Duplicity

Finally, Ms. Powell contends that the Indictment is duplicitous, citing *United States v. Newell*, 658 F.3d 1, 23 (1st Cir. 2011). A count is duplicitous if it "join[s] in a single count .... two or more distinct and separate offenses." *Id.* at 23, quoting *United States v. Canas*, 595 F.2d 73, 78 (1st Cir. 1979).[8] But the Circuit upheld in *Newell* the "structure" of an indictment very

---

[8] "The prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense." *United States v. Valerio*, 48 F.3d 58, 63 (1st Cir. 1995).

similar to the one here.[9] *Each* of seven counts of the indictment in *Newell* included "multiple instances of the misapplication of funds occurring within discrete one-year windows." *Id.* at 20.

The appellate posture of *Newell* turned the court's attention to the unanimity issue: how the jury should have been instructed to handle multiple transactions in a single count. The appropriate focus at *this* stage of the case before me is really aggregation – whether the government can, as it did here, combine a number of allegedly unlawful transactions into a single count. Cases other than *Newell* may be more instructive. *United States v. Verrecchia*, 196 F.3d 294 (1st Cir. 1999), upheld as not duplicitous the aggregation of twenty-one weapons into a single count of unlawful possession of a firearm. *Id.* at 297.[10] *United States v. Cruzado-Laureano*, 404 F.3d 470, 484 (1st Cir. 2005), upheld aggregation of multiple transactions to meet the $5,000 jurisdictional minimum of U.S.C. §666(a)(1)(A)(i) (embezzlement by an agent of state, local, or tribal government).

In cases alleging fraudulent receipt of benefits under 18 U.S.C. §641, aggregating multiple transactions into a single Count is common. *E.g., United States v. Smith, supra* at 562 (single count charging fraudulent monthly receipt of benefits from March 1994 until February

---

[9] The actual contention in *Newell* was that by including multiple fraudulent transactions in each of 7 counts, the government might have obtained convictions without the jury having been unanimous on *which* of the transactions the defendant committed. *Id.* at 20. *Newell*, at the conclusion of the trial was not seeking dismissal but, rather, a unanimity instruction. *Id.*

[10] *Verrecchia* had been charged with two counts of unlawfully possessing a firearm, but each count included multiple weapons. Like *Newell*, he focused his appellate complaint on the omission of a unanimity charge which would have required the jurors to agree unanimously on *which* firearm was unlawfully possessed from the two charged in Count One and the twenty-one named in Count Two. *Id.* at 295. The underlying analytic issue, however, was one of "unit of prosecution." *Id.* at 297, citing *Bell v. United States*, 349 U.S. 81, 83 (1955) (a Mann Act prosecution charging transportation of two women at one time, which the Court held but one offense). In holding that the simultaneous possession of multiple weapons is but one crime, chargeable in a single count, the Court rejected both the duplicity and the unanimity arguments: "Verrecchia was not entitled to a specific unanimity instruction to cure the alleged duplicity because neither count was duplicitous." *Id.* at 298.

10

1998); *United States v. Wharton*, Criminal No. ELHJ-13-0043, 2014 WL 1430387, at *1 (D.Md. April 10, 2014) (Count 4 charged fraudulent receipt of SSI benefits between October 1996 and December 2012); *United States v. Gray, supra* at *1 (May 1, 2012) (single count of conversion to her own use of benefits intended for children from July 1996 to October 2007); *United States v. Bundy, supra* at *1 (one count of embezzlement for acts from February 1991 until April 2004). *See also, United States v. Duhamel, supra* at 415 (single count charging embezzlement by multiple checks negotiated in 2005 and 2006 in violation of 18 U.S.C. 664).

The Court finds that the aggregation of multiple transactions into a single Count is permissible, that the Indictment is not rendered duplicitous as a result, and that any legitimate concerns about unanimity in the verdict may be addressed at a later time if the case proceeds to trial.

Conclusion

For the reasons stated above, the Court denies in part Ms. Powell's Motion to Dismiss the Indictment (ECF No. 19), but grants it to the extent that the Indictment is truncated to charge only acts occurring after June 18, 2009.[11]

SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

April 15, 2015

---

[11] Whether any evidence of acts occurring prior to June 18, 2009, may be introduced by the government is a separate issue and will be addressed at the time of trial if it arises.

11